UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 05-1995
(CA-03-3370)

JENNIFER GILLIAM,

Plaintiff - Appellant,

versus

SOUTH CAROLINA DEPARTMENT OF JUVENILE
JUSTICE,

Defendant - Appellee.

O R D E R

The court amends its opinion filed January 16, 2007, as follows:

On page 1, attorney information section, line 5 -- "Reyburn W. Lominack, III" is added as counsel for Appellee.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JENNIFER GILLIAM,

*Plaintiff-Appellant,*

v.

SOUTH CAROLINA DEPARTMENT OF
JUVENILE JUSTICE,

*Defendant-Appellee.*

No. 05-1995

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., Chief District Judge.
(CA-03-3370)

Argued: October 24, 2006

Decided: January 16, 2007

Before WIDENER, KING, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Widener and Judge Shedd joined.

## COUNSEL

**ARGUED:** William Jacob Watkins, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, Greenville, South Carolina, as Amicus Curiae Counsel Supporting Appellant. Shahin Vafai, GIGNILLIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellee. **ON BRIEF:** Vance J. Bettis, Reyburn W. Lominack, III, GIGNILLIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Plaintiff Jennifer Gilliam appeals from the district court's award of summary judgment to defendant South Carolina Department of Juvenile Justice (the "SCDJJ") on her Title VII hostile work environment claim. *See Gilliam v. S.C. Dep't of Juvenile Justice*, No. 3:03-3370-JFA (D.S.C. Aug. 10, 2005) (the "Opinion"). Gilliam contends on appeal that the court erred in concluding that her claim was partially time barred and in declining to apply the "continuing violation doctrine." We agree that the court erred in refusing to apply the continuing violation doctrine. The award of summary judgment to the SCDJJ must be affirmed, however, because Gilliam is nevertheless unable to make a prima facie showing of a hostile work environment.

I.

A.

1.

Gilliam is an African-American woman who began work for the SCDJJ as a Staff Nurse on April 15, 1995.[1] As a Staff Nurse, she rotated among the various campuses of the SCDJJ and was supervised by Dr. Sandra Carnesale. In March of 1998, Gilliam was promoted to Campus Nurse. In this position, she was supervised by George Bader and was assigned to work exclusively at the Willow Lane campus of the SCDJJ.

When Gilliam worked at the Willow Lane campus, she was the only African-American nurse at that facility. She contends that, from March 1998 until August 31, 2001 (when she became unable to work because of a disability), she was routinely harassed by Bader because

---

[1]The facts underlying this appeal are presented in the light most favorable to Gilliam, as she is the non-moving party with respect to the summary judgment motion. *See Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). The facts are drawn from the summary judgment record in the district court.

of her race. Gilliam asserts that Bader continuously treated her differently than he treated the white nurses. Although Bader never made racial comments or slurs to or about her, Gilliam testified by deposition that she could infer from Bader's actions that he was discriminating against her. The alleged incidents of harassment are mainly comprised of reprimands she received for tardiness and for work performance. In her testimony, Gilliam made general statements about Bader's discriminatory treatment of her, but she described few specific incidents to support her claim. And, other than her own testimony, Gilliam failed to forecast evidence that Bader had treated her differently than the white nurses.

2.

Gilliam asserts that, beginning in 1998, Bader harassed her about her work schedule and required that she turn in leave slips for the time she missed when she was late for work. Under the SCDJJ's written policy on attendance and work hours, Gilliam's shift ran from 7:00 a.m. to 3:00 p.m. On October 29, 1998, Bader wrote a memorandum concerning Gilliam's work schedule, explaining that it had been revised to 7:30 a.m. to 4:00 p.m. to accommodate Gilliam's need to take her child to school. The memorandum noted, however, that Gilliam was still required to present leave slips for the deviations in her schedule that had occurred prior to the October 29 schedule change. The memorandum summarized that Gilliam, in arriving late to work, had missed a total of 8 hours in August 1998, 21.75 hours in September, and 15.75 hours in October.

When Gilliam was late for work, she sought to make up time by staying late or skipping lunch. Instead of allowing Gilliam to make up time in this manner, Bader required that she turn in leave slips for the missed time.[2] As a result, Gilliam was not credited with working full shifts. She acknowledged that making up time by staying late or

---

[2]From October through December 1998, Bader sent Gilliam several memoranda asking her to sign her leave slips, which she failed to do. He also asked her to explain in writing why she refused to sign the slips and why she continued to be late for work. She did not respond to these requests either. Eventually, Bader had Gilliam's leave slips processed without her signature.

skipping lunch contravened the SCDJJ's written policy, but testified that Bader had allowed white nurses to make up missed time in that manner. Gilliam provided only one example, however, of such differential treatment. Gilliam asserted that two white nurses — Christy Johnson and Bill Merritt — were not penalized, as she had been, for failing to work a complete shift. She did not forecast evidence to support this allegation. In response to Gilliam's testimony, the SCDJJ proffered a reprimand Bader gave Merritt on December 16, 1998. In an accompanying affidavit, Bader stated that after Merritt received this reprimand, he came to work on time. Gilliam, on the other hand, continued to be late for work, despite receiving several reprimands.

After Bader altered Gilliam's work shift to begin at 7:30 a.m., Gilliam still had problems getting to work on time. Gilliam explained that she was unable to make it on time because she was not permitted to drop her child off at school until 7:30 a.m. Gilliam again made the general allegation that Bader allowed other nurses to arrive after 7:30 a.m. When asked for specifics at her deposition, she provided the example of Bader allowing Suzanne Bretz, a white nurse, to begin her shift at 8:00 a.m. so that she could get her child to school. Bader explained, however, that Bretz was allowed to start late because she was a lower level nurse than Gilliam. He could not change Gilliam's starting time to 8:00 a.m. because of her position as Campus Nurse. Bader repeatedly advised Gilliam, both orally and in writing, that she could start work at 8:00 a.m. if she returned to the position of Staff Nurse. After arguing with Bader over her start time for months, Gilliam submitted a memo to Lawrence Eberlin (the Director of Nursing), Greg Cornell (the Director of Medical Services), and Bader, seeking permission to report to work each day at 8:00 a.m. until January 8, 1999, when her son would begin attending a new school. Because Gilliam could drop her son off earlier at the new school, she could then be at work by 7:30 a.m. This request was approved.

3.

Gilliam next contends that, beginning in 1999, she was unjustly reprimanded with respect to her work. Gilliam received several reprimands, approved by Eberlin, Bader's supervisor, concerning problems with documentation of medications administered to juveniles. Most of those reprimands occurred after Bader had inspected the Wil-

low Lane campus. Gilliam contends that several of the reprimands were for deficiencies in the 7:00 a.m. medications administration, when she was not working. She testified that Bader also entered her office on weekends to search for evidence of mistakes in her work. Gilliam made the general allegation that white nurses were not reprimanded for their work performance deficiencies. When asked for detail, she provided the name of a white nurse who was not penalized as Gilliam had been. The SCDJJ, however, had filed a reprimand against that nurse.

Gilliam next alleges that, in late 2000 and early 2001, Bader began to harass her about her duty to stock and organize the medications at Willow Lane. This duty was an additional responsibility Bader had asked her to undertake. In response to a memorandum Bader sent her on the deficiencies in her performance in this respect, Gilliam stated that this assignment was "a forum for [her] to be frequently *Questioned*, *Threatened*, *Criticized* and *Humiliated* in front of my co-workers, as well as a *Stage* for possible disciplinary action(s)." J.A. 307.[3] Bader later removed the duty to stock and organize medications from Gilliam's list of responsibilities.[4]

Aside from Gilliam's testimony on Bader's treatment of her, she proffered the testimony of Williene Harrison, a retired African-American nurse who worked in a different SCDJJ department, and Jacques Reeves, a custodian for the SCDJJ. In her deposition, Harrison testified that she felt Bader treated her and Gilliam differently than the white nurses and that he was overly critical of their work. She also testified that she had seen and heard Bader question Gilliam about her work duties in the presence of other nurses. She observed that Bader's tone of voice was unfriendly and that he did not similarly question the white nurses. Reeves testified that he felt Bader treated Gilliam differently than the white nurses at Willow Lane. He recalled observing an incident in which Bader reprimanded Gilliam for laughing too loudly in the hallway. Reeves was uncertain if Bader had reprimanded other nurses for also laughing loudly in the hallway.

---

[3]Citations to "J.A. ___" refer to the Joint Appendix filed in this appeal.

[4]The incidents relating to stocking and organizing medications occurred prior to January 26, 2001.

4.

Bader's harassment of Gilliam culminated in an alleged assault that occurred on January 26, 2001. On that occasion, Bader entered Gilliam's office with a memorandum indicating her reassignment to a different department. Gilliam asked to make a copy of the memorandum so that she could discuss it with her lawyer, but when she started to the door Bader blocked her path. She tried to step around him, but he grabbed her arm and pulled her back into the office. Bader then took the memorandum from Gilliam and wrote a note on it, indicating that Gilliam had "[r]efused to sign [the] paper." J.A. 212. At this point, Gilliam cried out for help and some co-workers came to her office. Gilliam retrieved the memorandum from Bader after the co-workers arrived. She wrote her own note on it, stating that she "did not refuse to sign[.] I wanted to make a copy first for my Attorney." *Id.* She then made a copy of the memorandum. Gilliam reported the incident to the SCDJJ's Human Resources Department, the Deputy Director of Rehabilitation Services, and the Director of Nursing. After this incident, Gilliam was terrified of Bader and would often lock her office door while at work. Bader did not speak to Gilliam for at least a month after this incident.

On May 21, 2001, Gilliam had a mental breakdown and was hospitalized. She was treated for stress, depression, and anxiety, which she attributed to her work. Gilliam stated that, on August 31, 2001, after she returned to work, Bader committed three specific acts of harassment against her. First, Gilliam received a reprimand for two errors in the administration of medications to juveniles. This reprimand was given to her after an August 29, 2001, inspection by the state Department of Health and Environmental Control found deficiencies in the medication records of juveniles in Gilliam's care (the "Inspection Reprimand"). Gilliam acknowledged that she had erred in this regard, but explained that she was distracted by a juvenile when the mistakes occurred.

Next, Gilliam received a reprimand for leaving work early on August 29, 2001, without prior approval from a supervisor (the "Leaving Early Reprimand"). Gilliam explained that she had an appointment that afternoon that she needed to keep. She sought to ask Bader and Eberlin for permission to leave, but neither was available.

She then informed another employee that she was leaving early. Gilliam testified that white nurses were allowed to leave early without being reprimanded. Finally, Bader informed Gilliam that he would be moving into an office adjacent to hers, at the request of the facility's director (the "Bader Office Move"). Gilliam was hospitalized on the day these three incidents occurred, and she did not return to work after this hospitalization. She was administratively terminated by the SCDJJ on February 25, 2002. Gilliam was eventually declared disabled and is currently receiving disability benefits.

B.

On January 15, 2002, Gilliam filed charges of discrimination with both the Equal Employment Opportunity Commission (the "EEOC") and the South Carolina Human Affairs Commission, alleging discrimination by the SCDJJ on the basis of race and disability. Both agencies thereafter provided Gilliam with right to sue letters. Gilliam filed this action against the SCDJJ on October 23, 2003, alleging, inter alia, a Title VII claim for a race-based hostile work environment (the "Claim").[5]

The SCDJJ filed a motion for summary judgment in the district court on November 5, 2004. The magistrate judge thereafter recommended denying summary judgment on the Claim. *See Gilliam v. S.C. Dep't of Juvenile Justice*, No. 3:03-3370-17BC (D.S.C. May 6, 2005) (the "Report and Recommendation").[6] In its motion for summary judgment, the SCDJJ maintained that the Claim was partially time barred. In the alternative, the SCDJJ contended that Gilliam was unable to make a prima facie showing of a hostile work environment because the evidence failed to show that the actions about which she complained were based on race. After assessing the record, the magistrate judge first concluded that the Claim was not partially time barred and that the "continuing violation doctrine" applied. *See* Report and

_____

[5]Gilliam's complaint also alleged claims for discrimination under the Americans with Disabilities Act and for race-based disparate treatment and constructive discharge under Title VII. These claims are not subject to this appeal.

[6]The Report and Recommendation of the Magistrate Judge, dated May 6, 2005, is found at J.A. 301-17.

Recommendation 13-14. He also concluded that, "[e]ven though the evidence in the record is limited," it is sufficient to establish that Bader's actions were taken because of Gilliam's race. *Id.* at 14. The SCDJJ filed objections to the Report and Recommendation regarding the Claim.

By its Opinion of August 10, 2005, the district court rejected the Report and Recommendation with regard to the Claim and granted summary judgment to the SCDJJ. *See* Opinion 8.[7] In its ruling, the court first concluded that certain of the incidents underlying the Claim were time barred and that they were not saved by the continuing violation doctrine. *See id.* at 7. The court determined, however, that the three incidents of August 31, 2001, occurring within the 300-day period before March 20, 2001, were not time barred. *See id.* at 5. It then concluded that the evidence of the incidents of August 31, 2001, failed to show that Bader took any of those acts because of Gilliam's race. *See id.* at 8. The court thus ruled that Gilliam had failed to make a prima facie showing on the Claim and awarded summary judgment to the SCDJJ. *See id.*

Gilliam has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the non-moving party. *See Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). An award of summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Furthermore, we are entitled to affirm an award of summary judgment on a ground different than that relied upon by the district court. *See Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir. 1991) ("[T]he prevailing party may, of course, assert in a reviewing court

---

[7]The Opinion of the district court is found at J.A. 334-41.

any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." (internal quotation marks omitted)).

### III.

We first address Gilliam's contention that the district court erred in concluding that the continuing violation doctrine does not apply to the Claim. Because the court erred on this issue, we are obliged to then address the substance of the Claim, viewing the evidence in the proper context, to determine whether Gilliam has made a prima facie showing of a race-based hostile work environment. As explained below, she has failed to do so, and we therefore affirm summary judgment to the SCDJJ on this alternative ground.

### A.

Gilliam first contends that the district court erred in concluding that the continuing violation doctrine does not apply to the Claim. In order to pursue a Title VII claim, a plaintiff must first file an administrative charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e). Any subsequent complaint in federal court can only be premised on acts of discrimination that occurred within the applicable limitations period. *See id.* Any discrete acts of discrimination that occurred prior to the applicable limitations period are procedurally barred and cannot be used as a basis for recovery. *See id.* A 300-day limitations period applies when, as here, the plaintiff has also filed her charge with her state's employment discrimination agency. *See id.*; *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004). In this case, the 300-day limitations period includes the period from March 20, 2001, to January 15, 2002, as Gilliam filed her charge with the EEOC and her state's employment discrimination agency on January 15, 2002. Gilliam specifically relies on three incidents falling within the 300-day period, each occurring on August 31, 2001: (1) the Inspection Reprimand, (2) the Leaving Early Reprimand, and (3) the Bader Office Move (collectively the "August 31 Acts").

If the continuing violation doctrine applies here, however, the Claim could be supported by all of the alleged incidents of harassment by Bader, including those occurring prior to March 20, 2001.

Under the doctrine, a hostile work environment claim "may appropriately extend . . . to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well." *White*, 375 F.3d at 293. Thus, if Gilliam has shown that the August 31 Acts were a continuing part of discriminatory activity that began prior to the limitations period, the Claim would properly include incidents occurring prior to March 20, 2001.

The district court ruled, however, that the continuing violation doctrine does not apply to the Claim. *See* Opinion 7. In assessing the doctrine's applicability, the court examined each of the August 31 Acts to determine whether any of them could "act as an anchor to conduct that occurred prior to the 300-day statutory period." *Id.* at 5. It found that none of the August 31 Acts contributed to a racially hostile work environment because none of them, viewed in an isolated context, constituted a Title VII violation. *See id.* at 5-7. Thus, the court ruled that the continuing violation doctrine does not apply to the Claim. *See id.* at 7.

The district court was not without authority for its ruling on this point. The problem with this precedent, however, is that it was outdated, as a result of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). For example, we had recognized, prior to *Morgan*, that the continuing violation doctrine is not applicable if an incident occurring within the 300-day limitations period does not, viewed in isolation, constitute a Title VII violation. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 442-43 (4th Cir. 1998) (concluding that there must be Title VII violation within limitations period for continuing violation to apply); *Beall v. Abbott Labs.*, 130 F.3d 614, 620-21 (4th Cir. 1997) (concluding that plaintiff cannot rely on incidents that occurred outside of limitations period when nothing within limitations period amounted to Title VII violation).

The Supreme Court, however, in its *Morgan* decision in 2002, explained the standards for applying the continuing violation doctrine — undermining our earlier authority on this point — and instructed that evidence of behavior occurring outside of the applicable limitations period can be used to support a plaintiff's hostile work environment claim. The Court held that "consideration of the entire scope of

a *hostile work environment claim*, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105 (emphasis added). In characterizing hostile work environment claims, the *Morgan* Court explicitly observed that "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115.[8]

Gilliam maintains, on the basis of *Morgan*, that the district court erred in its analysis of the continuing violation doctrine and that the court should not have assessed the August 31 Acts in isolation. On the contrary, she contends that the court should have assessed the entire scope of the hostile work environment claim, including the forecast evidence of incidents occurring prior to the limitations period, to determine if any of the August 31 Acts had contributed to a hostile work environment. *See Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (concluding that it is "improper to isolate incidents of facially neutral harassment and conclude, one by one, that each lacks the required discriminatory animus"); *Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir. 2002) (concluding that "in light of the statement of law in *Morgan* for hostile work environment claims, the district court erred in concluding that Jensen needed to show a discrete act of discrimination within the relevant time period and misconstrued the nature of a continuing violation"). On the other hand, the SCDJJ asserts that the district court was correct, and that, in order for *Morgan* to be applicable here, at least one of the three August 31 Acts must, viewed in isolation, be discriminatory in nature.

---

[8]In comparison to a hostile work environment, the Court, on the other hand, also ruled that the applicable statutory provision, § 2000e-5 of Title 42, "precludes recovery [by a plaintiff] for *discrete acts of discrimination or retaliation* that occur outside the statutory time period." *Morgan*, 536 U.S. at 105 (emphasis added). Examples of discrete acts identified by the Court include "termination, failure to promote, denial of transfer, [and] refusal to hire." *Id.* at 114. Gilliam has not alleged any discrete acts as part of the Claim subject to this appeal.

Contrary to the SCDJJ's contention, *Morgan* explained that a hostile work environment claim normally "occurs over a series of days or perhaps years" and certain behavior may not alone constitute acts of discrimination under Title VII. *See* 536 U.S. at 115. Under *Morgan*, an incident falling within the applicable limitations period need only, in order for the continuing violation doctrine to apply, have contributed to the hostile work environment. *See id.* at 117. The district court thus erred in assessing the August 31 Acts in isolation, seeking to determine if any of them, standing alone, was discriminatory in nature. *See Potter*, 435 F.3d at 450; *Henderson*, 315 F.3d at 859. Under the continuing violation doctrine, none of the August 31 Acts had to be discriminatory in and of itself. It was only necessary for one of these acts to contribute to the behavior relating to the incidents that occurred prior to the limitations period.

In support of the Claim, Gilliam alleges three incidents that occurred within the limitations period: (1) the Inspection Reprimand, (2) the Leaving Early Reprimand, and (3) the Bader Office Move. Because Gilliam testified that Bader reprimanded her several times prior to the limitations period for deficiencies similar to those involved in the August 31 Acts, each of these Acts may reasonably be deemed to have been a continuing part of the discrimination Bader allegedly carried out against Gilliam. Thus, we must assess the August 31 Acts, as well as the entire scope of the Claim, including behavior occurring prior to the limitations period, to determine if Gilliam made a prima facie showing of a racially-based hostile work environment.

## B.

Because the continuing violation doctrine frees Gilliam from relying only on the three August 31 Acts in support of the Claim, we must directly address the issue of whether her evidence of a Title VII racially-based hostile work environment is sufficient to survive summary judgment. The Opinion, however, did not evaluate the entire scope of the Claim. *See* Opinion 7-8. Instead, it concluded, based on the three August 31 Acts, that the Claim did not survive summary judgment because the evidence failed to show that any of these Acts was based on race. *See id.* at 8. Because our review of this ruling permits us to affirm on grounds not relied on or fully addressed below,

we will apply the applicable principles and assess the merits of the Claim. *See Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir. 1991).

To survive summary judgment on the Claim, Gilliam is obliged to "demonstrate that a reasonable jury could find [Bader's] harassment (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). In addition, she must show that there is some basis for imposing liability on the SCDJJ. *See id.* at 184. The SCDJJ maintains that Gilliam cannot make a prima facie showing because she has failed to prove that the non-time-barred incidents were based upon race. To establish that harassment was based on race, Gilliam "must show that 'but for' [her] race . . . , [she] would not have been the victim of the alleged discrimination." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *see also Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (concluding that personal disputes with supervisor, without evidence that harassment was racial in nature, were not enough to sustain summary judgment on hostile work environment claim).

Viewed in this context, we are obliged to affirm the award of summary judgment to the SCDJJ because, regardless of whether the court properly considered the incidents that occurred prior to the limitations period, Gilliam has not shown that her alleged harassment was based upon race. First, she failed to present any direct evidence that Bader's conduct was motivated by racial animosity. Indeed, she testified that Bader made no derogatory comments to her or others about her race. Second, although Gilliam was entitled to show that Bader treated her differently than similarly situated white nurses on the basis of race, she has failed to do so. *See Causey*, 162 F.3d at 801-02 (concluding that "conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment"). Although Gilliam made several general statements of dissimilar treatment, she provided very few specifics. The few specific examples Gilliam did proffer were not supported by any evidence other than her own general statements, which often lacked detail.[9] Such assertions, standing alone, are

---

[9]In addition to her own testimony, Gilliam presented the evidence of Williene Harrison, a retired African-American nurse who worked in a

insufficient to sustain an actionable Title VII claim. *See Causey*, 162 F.3d at 801-02. Finally, even if Bader disliked Gilliam and made her job more stressful as a result, that fact, absent some independent evidence of racial animosity, is not sufficient to establish a prima facie claim. *See Hawkins*, 203 F.3d at 281 ("Even if [the employer] harbored some personal dislike of [the plaintiff] that made [the plaintiff's] job more difficult or stressful, an employer is not required to like his employees." (internal quotation marks omitted)). Thus, the district court's award of summary judgment to the SCDJJ must be affirmed, in that Gilliam has failed to make a prima facie showing on the Claim.

## IV.

Pursuant to the foregoing, we affirm the district court's award of summary judgment to the SCDJJ.

*AFFIRMED*

---

different department than Gilliam, and Jacques Reeves, a custodian at the Willow Lane campus. Although both testified that they believed Gilliam was treated differently by Bader, they failed to provide any specifics on how Bader had used Gilliam's race to treat her differently than similarly situated white nurses. They gave unsupported, conclusory statements only, and their testimony does not save Gilliam's Claim. *See Causey*, 162 F.3d at 801-02; *see also Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996) (concluding that plaintiffs' conclusory statements as well as those of other witnesses were not enough to show that plaintiffs, African national employees, were treated differently than other similarly situated white American employees, because they were "made in general, conclusory terms" with "names, times, and occasions" missing).