**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1059**

KATHARINE ROUSE,

             Plaintiff - Appellant,

        v.

DUKE UNIVERSITY; LARRY MONETA,

             Defendants - Appellees.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Catherine C. Eagles,
District Judge.  (1:11-cv-00549-CCE-JEP)

Submitted:  June 4, 2013              Decided:  July 25, 2013

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Robert C. Ekstrand, Stefanie A. Smith, EKSTRAND & EKSTRAND, LLP,
Durham, North Carolina, for Appellant.  Paul K. Sun, Jr., Dixie
T. Wells, James M. Weiss, ELLIS & WINTERS LLP, Raleigh, North
Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In February 2007, Katharine Rouse was raped at an off-campus party that she was attending as an undergraduate student at Duke University. After Rouse reported the incident, Duke transported her to the hospital and contacted the Durham Police Department, who arrested Michael Burch and charged him with the rape. Burch eventually pleaded guilty to the charge.

Conducting a brief investigation, Duke concluded that although a Facebook invitation for the party had listed a campus fraternity as a host, the fraternity had no involvement. It did learn that the party had taken place in a house owned by a significant financial benefactor and leased to Duke students. Thereafter, it ended the investigation and did not sanction any fraternity or student.

Although Duke allowed Rouse to take a temporary leave-of-absence, Rouse was not able to complete her courses from home and, instead, took a personal leave-of-absence for the remainder of the semester. She returned, however, to the campus the next fall. Later that fall, she informed Duke that she was transferring to another school, and Rouse's academic dean sent her a form letter confirming the transfer request and noting that the request forfeited her eligibility to seek readmission to Duke.

Rouse commenced this action alleging that Duke was liable for "fail[ing] to investigate or initiate disciplinary proceedings against either the Duke fraternity, its members, or the other Duke students who attended the party" and for "barring her from ever applying to re-enroll at Duke," in violation of Title IX. She also alleged state law claims for breach of contract, intentional infliction of emotional distress, and negligence. The district court granted Duke's motion for summary judgment, and we affirm.

I

Katharine Rouse enrolled at Duke University in the fall of 2006. Several months later, however, in January 2007, Rouse emailed her academic dean, Dean Diane McKay, to discuss her transfer to a school closer to her home in New York. On Dean McKay's suggestion, Rouse and the Dean met the following week to discuss whether a transfer was in Rouse's best interest. Rouse expressed an interest in transferring because her mother was sick. Dean McKay's contemporaneous notes reflect that she cautioned Rouse, explaining Duke's rule that "if students enroll as full-time students elsewhere, they are ineligible to re-enroll at Duke." Rouse testified later that she could not remember whether Dean McKay told her about the transfer policy. The policy was published in its Bulletin as follows:

> If a student enrolled at Duke subsequently transfers to another institution as a degree-seeking student, the student will be ineligible to re-enroll as an undergraduate at Duke.

Dean McKay recommended that Rouse should explore all of her options to make sure that a transfer would be the right one. She also noted that there was a possibility of appealing the re-entrance bar, but there could be no guarantees.

Several weeks after Rouse's meeting with Dean McKay, on the evening of February 10, 2007, Rouse attended an off-campus party at a private house rented by six Duke students. One of the residents at the house was a member of the Phi Beta Sigma fraternity, a fraternity formally recognized by Duke. At the party, Michael Burch followed Rouse into a bathroom and raped her. Rouse thereafter returned to her dormitory, and residents of the dormitory reported the rape to the Duke University Police. The Duke Police persuaded Rouse to go to the emergency room. After learning that the attack occurred off campus, the Duke Police immediately notified the Durham Police Department. With the assistance of the Duke Police, the Durham Police investigated, leading to the arrest of Burch. He eventually pleaded guilty to the rape. Burch was not formally affiliated with Duke, although he played basketball at a campus gymnasium.

After the rape, Rouse went home to New York, and Dean McKay sent notes to each of Rouse's professors to allow her to make up

4

any missed work. Dean McKay also spoke with Rouse's mother and later with Rouse to discuss academic options for the remainder of the semester. Rouse had hoped to complete at least some of her courses remotely, in part because she had been considering transferring to Columbia University, which required that transfer students complete a full academic year at their original institution. Duke, however, did not allow Rouse to complete her courses remotely because of the nature of the courses, but Dean McKay was able to secure a waiver from Columbia with respect to its requirement. Rouse thereupon decided to take a personal leave-of-absence for the spring, intending to return to Duke in the fall. Duke credited her with all of her tuition and pro-rated a portion of her room and board.

Rouse returned to Duke in the fall of 2007, and Dean McKay and the Registrar's office arranged for her to retain the same priority in class registration as if she had not taken a leave of absence. Rouse, therefore, was able to register for all of the classes that she wanted.

Within a few weeks of returning, however, Rouse again considered transferring because being on campus brought back bad memories, and she was uncomfortable with her interaction with other students. Accordingly, in late October, she sent Dean McKay an email stating, "I am planning on transferring, this

5

time for real, next semester." She asked to meet with Dean McKay soon because some schools had November application deadlines.

Rouse and Dean McKay met on November 8, and Rouse told Dean McKay that she was going to transfer. Dean McKay's notes of the meeting indicate that Rouse told the Dean that she "intends/is fully determined to transfer to Hofstra or Fordham (or possible FIT) at semester's end." Rouse testified that, at that time, she had no intention of returning to Duke, and she did not engage Dean McKay on that subject. Dean McKay's contemporaneous notes also state that Rouse "knows that she cannot apply to return to Duke," but Rouse testified that Dean McKay did not tell her about the policy at that meeting.

The following day, November 9, Rouse emailed Dean McKay a formal statement, drafted for Rouse by Dean McKay, of her intention to be "voluntarily transferred out of Duke University and into Fordham University as of the Spring 2008 semester." Thereafter, she sent Dean McKay another email about her transfer applications to the other schools, asking Dean McKay to send forms to Hofstra, Stony Brook, and Fordham. Dean McKay acted in response to Rouse's request by sending letters of recommendation to each of these schools, describing Rouse as "bright, assertive, and creative." Duke also sent the schools copies of Rouse's transcripts. Duke processed Rouse's withdrawal as

6

"voluntary" and noted that anticipated return was "not applicable."

On December 18, 2007, Dean McKay sent Rouse a form letter used by all academic deans reiterating Duke's policy about transfers:

> I am writing to confirm that I have received your written request to be voluntarily withdrawn from Duke University so that you may complete your undergraduate degree elsewhere. Accordingly, we have processed this request and informed the relevant offices on campus that you will not be returning to Duke.

> Please know that effective August 28, 2006, Trinity College policy is that students who withdraw from Duke in order to attend another institution as a degree-seeking student may not re-enroll here for undergraduate study. Therefore, you have forfeited your eligibility to seek readmission to Duke. If you have any further questions about this policy, please contact us at the Academic Advising Center . . . .

Dean McKay had used the same form letter to advise numerous other students of the policy, both male and female, when told that they were transferring from Duke. As Dean McKay said, "It was my practice, and to my knowledge that of the other deans, to send the letter when the student confirmed his or her intent to withdraw from Duke and transfer."

Rouse said that when she received the letter, she was surprised and angry, but she acknowledged that she did not contact anyone at Duke to ask questions about the policy because she "did not have a desire to go back." Instead, Rouse

7

transferred to Hofstra in the spring of 2008 and graduated from that institution in May 2011.

According to Rouse, in early 2009, she considered coming back to Duke and discussed the possibility with her parents. Rouse's father then called Duke and asked to talk to its President, Richard Brodhead. Vice President Larry Moneta, however, met with Rouse's father in March 2009, and Rouse's father used the meeting only to ask Vice President Moneta for help in securing a meeting with President Brodhead. Moneta agreed to talk to President Brodhead, but he never met with Rouse's father.

Rouse commenced this action in state court on December 17, 2010, naming Duke University and Vice President Moneta as defendants. She alleged that the defendants conducted an inadequate investigation of the rape incident, created or allowed a hostile environment, and discriminated against her in denying her return to Duke. She claimed that these facts amounted to a violation of Title IX and supported state law claims for breach of contract; negligent infliction of emotional distress; intentional infliction of emotional distress; and negligence.

The defendants removed the case to federal court and then filed a motion for judgment on the pleadings. The district court granted the motion as to all claims against Vice President

8

Moneta because the were barred by the applicable statute of limitations. As to Duke, the court denied the motion to dismiss the claim for "hostile educational environment," in violation of Title IX, and denied the motion to dismiss the common law claims "to the extent those claims arise from the sending of the December 18, 2007 letter." It granted the motion to the extent that the common law claims arose from other facts because they were time barred. Finally, the court granted the motion on all other claims.

At the close of discovery, the district court granted Duke's motion for summary judgment on the remaining claims. This appeal followed. Neither party has requested oral argument.

## II

Rouse contends first that she is entitled to a jury trial on her Title IX claim, including an argument that Duke failed to investigate her rape and "excluded her from its educational program and denied her of its benefits by refusing to make reasonable modifications to its policies that were necessary to accommodate her inability to remain on campus as a result of the rape and Duke's indifference to it."[*] Duke responds that the

---

[*] To establish a Title IX sexual harassment claim, Rouse would have to show that:

9

district court correctly granted it summary judgment "because [the Title IX] claim is time barred, because Duke cannot be held liable under Title IX for the off-campus rape of a student by an unaffiliated third party, because Duke did not sexually harass Ms. Rouse, cause any sexual harassment, or make her more vulnerable to it, and because Duke's response to the rape was not clearly unreasonable."

The statute of limitations for Rouse's Title IX claim is three years, as borrowed from state law. See Wilmink v. Kanawha Cnty. Bd. of Educ., 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam); N.C. Gen. Stat. Ann. § 1-52(16). Because Rouse commenced this action on December 17, 2010, the only alleged events falling within the applicable three-year period of limitations are (1) Dean McKay's December 18, 2007 form letter informing Rouse that she could not seek re-enrollment at Duke

---

(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc). An institution can be liable for deliberate indifference where "at a minimum, [it] cause[s] students to undergo harassment or make them liable or vulnerable to it." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 645 (1999) (internal quotation marks and alterations omitted).

10

and (2) Rouse's father's inability to secure a meeting with President Brodhead. But neither of those acts contributed to the hostile educational environment based on sex on which Rouse bases her Title IX claim. See Nat'l R.R. Passenger Co. v. Morgan, 536 U.S. 101, 114-17 (2002); Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 140 (4th Cir. 2007); see also Jennings, 482 F.3d at 695.

Dean McKay's form letter, confirming Rouse's request to transfer, was routinely used by Duke's academic deans and was based on a generally applicable transfer policy, that was publicly available on the internet. Moreover, Dean McKay's form letter was substantially similar to letters that she sent to other students who had stated they were transferring from Duke. In sum, the undisputed facts establish that Duke followed its ordinary policy in sending the letter in response to a transfer request.

Moreover, the letter directed Rouse to contact the Academic Advising Center by phone or email if she had questions about Duke's transfer policy. Rouse did neither. And although Rouse alleges that Duke misapplied the transfer policy to her because she was not enrolled at another school at the time she received the letter, Rouse did not request to re-enroll at Duke before she transferred. Indeed, Rouse testified that at the time she received the letter she "did not have a desire to go back" and

11

did not even think about returning to Duke until more than a year later. At that point, she had already been enrolled at Hofstra. Thus, the letter did not contribute to the hostile environment claim.

That leaves Rouse's father's inability to secure a meeting with Duke's President Brodhead. Rouse asserts that although Vice President Moneta promised to confer with President Brodhead, President Brodhead never agreed to meet with her father, and she was therefore unable to seek re-enrollment. But Rouse does not assert that she was unable otherwise to communicate with Duke or to request an exception to Duke's generally applicable transfer policy. Indeed, she identifies no evidence suggesting that she ever expressed her desire to re-enroll to Duke. A university president sending a high-level designee to a meeting and himself not meeting does not constitute a contributing act to a hostile environment claim.

Because the acts not barred by the statute of limitations do not rise to the level of acts contributing to a Title IX claim, the district court properly dismissed Rouse's Title IX claim.

III

As to the state law claims for breach of contract, intentional infliction of emotional distress, and negligence,

12

the district court dismissed them as being barred by the applicable statute of limitations except for the claims that might arise out of Dean McKay's December 18, 2007 letter. Rouse did not appeal this application of the statute of limitations. She also did not appeal the dismissal of her claim for negligent infliction of emotional distress.

As to the letter's support of a breach-of-contract claim, Rouse contends that "[a] reasonable jury could conclude that Duke breached its educational contract . . . by applying its provisions governing students who enroll as degree-seeking students in another institution" to her when she was not enrolled or admitted at another institution. Rouse also argues that "in misapplying the transfer policy to her . . . Duke breached an implied covenant of good faith and fair dealing." We disagree. Duke merely followed its standard procedure of sending a confirming letter after it received a formal expression of an intent to transfer, which Rouse pursued by attending Hofstra. Indeed, she did not even think of re-enrolling at Duke until the spring of 2009, after she had already been enrolled at Hofstra for a year. Accordingly, we affirm the district court's dismissal of the breach-of-contract claim.

As to Rouse's claim for intentional infliction of emotional distress, the district court concluded:

13

> [T]he record does not establish any basis for finding that Ms. Rouse suffered severe emotional distress as a result of Dean McKay's letter. . . . [T]here is no evidence that Dean McKay coerced, duped, or tricked Ms. Rouse into transferring from Duke and forfeiting her ability to reenroll. . . . Dean McKay's actions do not amount to extreme and outrageous conduct.

The record supports these conclusions, and we therefore affirm the dismissal of that claim.

Finally, as to Rouse's negligence claim, the district court concluded:

> Since Ms. Rouse told Dean McKay that she wanted to transfer, Dean McKay had no reason to believe Ms. Rouse would want to re-enroll at Duke, and Ms. Rouse did not at the time have any intention to return to Duke, Ms. Rouse cannot show that Duke violated any duty of care in sending the letter or that the letter caused her any reasonably foreseeable injury.

These conclusions are fully supported by the record and again, we affirm the district court's dismissal of that claim.

Rouse's claim for punitive damages obviously cannot stand with the dismissal of her other claims for compensatory damages. See N.C. Gen. Stat. § 1D-15(a).

*     *     *

For the foregoing reasons, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

14