**Bridgett EDWARDS, Plaintiff**

v.

**MURPHY–BROWN, L.L.C., Defendant.**

**Civil Action No. 2:10cv165.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 4, 2011.

Frederick Hope Marsh, Esq., Henry Evans Howell, III, Esq., Henry Levander Marsh, III, Esq., for Plaintiff.

Matthew Westcott Smith, Esq., John M. Bredehoft, Esq., Mark Edward Warmbier, Esq., for Defendant.

### OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on Defendant Murphy–Brown L.L.C.'s ("Defendant") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. After examining the motion, associated briefs, and the Complaint, the Court finds that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed.R.Civ.P. 78(b);

E.D. Va. Loc. R. 7(J). Therefore, the matter is now ripe for decision and, for the reasons set forth below, Defendant's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART.**

## I. FACTS AND PROCEDURAL HISTORY [1]

Defendant owns and operates a hog breeding and farrowing facility, known as Farm 8508 ("Farm 8"), in Wakefield, Virginia. Bridgett Edwards ("Plaintiff") began working for Defendant at Farm 8 on or about April 8, 1996. During her employment with Defendant, Plaintiff has worked solely in the farrowing department of Farm 8. In the past, she has received good job performance evaluations, resulting in her promotion(s) from her starting position to "herds person four." Compl. ¶ 10.

Beginning in 2003 and continuing until at least 2008, the "defendant began hiring a number of Hispanic males to work on the hog farms." Compl. ¶ 11. Among these Hispanic male employees were Umberto Santiago, Miguel Vazquez, Salvador Hernandez,[2] Jose Rodriguez, Ignacio Rosario, Miguel Navarro, and Leonardo (Talon) Rodriguez. During this same 2003–2008 timeframe, Plaintiff alleges that these "Hispanic co-workers" began to engage in harassing behavior targeted at Plaintiff

and her co-worker, Felicia Tennessee, who was working with the Plaintiff by 2006. Compl. ¶ 12–13. This behavior included "touching Plaintiff on the shoulders," "rubbing Plaintiff's leg and foot," "subjecting Plaintiff to extraordinary scrutiny," "making disparaging remarks about Plaintiff's race," and "smirking, laughing, and gesturing towards Plaintiff." Compl. ¶ 12. Much of this behavior was reported to Defendant's management, but management failed to take disciplinary action against the male employees.

Plaintiff also complains of three separate incidents that all took place at some point between 2003 and 2007, though she never provides specific dates. In the first incident, Plaintiff learned that one of the male co-workers had been caught masturbating in a pair of woman's underwear on a nearby farm. Several of the male co-workers openly talked about this incident in the Plaintiff's presence. Once again, management took no disciplinary action. In yet another incident, the Plaintiff found a graphic sexual picture depicting male and female sex organs in the room where she was working. The picture came from a breeding area where Miguel Navarro and Leonardo Talon worked, but Plaintiff does not allege that she knows who drew the picture. Once again, the Plaintiff claims

---

1. The facts recited here are drawn from the Plaintiff's Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion to dismiss. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com,* 591 F.3d 250, 255 (4th Cir.2009) ("... in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."). *See also Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982) (noting that when a defendant asserts that the Complaint fails to

allege facts upon which subject matter jurisdiction can be based, and does not rely on information outside the Complaint, the 12(b)(1) motion is considered under the 12(b)(6) standard).

2. Plaintiff's Complaint also makes reference to a Salvador Rodriguez while Defendant's memorandum refers to Salvador Rodriguez. The Court is under the impression that all of these names refer to the same individual. For purposes of this decision, he will be referred to as Salvador Hernandez because that is how he is first referred to in the Plaintiff's Complaint.

that management took no disciplinary action. In the last incident, although Plaintiff only speaks scant Spanish, she believes her Hispanic co-workers were describing female body parts among themselves, while pointing to Plaintiff and her co-worker.

Plaintiff further alleges that in December 2007, Miguel Navarro brought a digital camera to work and took Plaintiff's picture against her wishes. Additionally, the male co-workers continued the practice of grouping together and talking among themselves, while pointing and gesturing towards Plaintiff and her female co-worker. The Plaintiff informed management of this conduct, but management failed to take remedial action.

Finally, in January 2008, the harassment of which Plaintiff complains reached its pinnacle. As part of the Defendant's Farm 8 sanitation procedures, Plaintiff and her female co-worker were required to shower in the morning before putting on their uniforms and entering the farrowing room. They also typically showered again at the end of the day, but showering at that time was apparently not required. On January 24, 2008, Plaintiff and Ms. Tennessee entered the woman's shower room at the end of the day. However, on that day they decided merely to disrobe and change to their street clothes, rather than shower. When Ms. Tennessee opened the door to exit the shower area and proceed to where the sinks are located, she encountered Salvador Hernandez kneeling against the door that divides the two areas. When the door opened, Salvador fell into the woman's shower room, jumped up and ran out of the area. Examination of the door revealed three drill holes, with two at the level of the doorknob and one at eye level. These holes could only be detected with the lights off. At the time the incident occurred, Plaintiff,

Salvador and Ms. Tennessee were the only employees on the farm.

The next day, the Plaintiff reported this incident to her supervisor. Management then patched the holes, but did not replace the door. According to the Plaintiff, management informed her that they would not be taking any disciplinary action against Salvador or investigating to determine how many other male employees might be involved in the incident, because firing male employees would leave the farm short handed. When Plaintiff called Laura Brooks, the assistant manager in Defendant's human resources department, she discovered that her complaints had not reached that department and discipline would not be taken against any employees. The Plaintiff eventually reported the shower incident to the police and Salvador was later arrested, fined, sentenced, and terminated by the Defendant.

After the incident, the Plaintiff continued to complain to management, describing her humiliation stemming from the incidents and fear of working among male employees. In response, management decided to transfer the Plaintiff and her female co-worker to another farm—telling her to report on February 1, 2008. However, the Plaintiff was under the impression that the male employees at the new farm behaved in the same harassing way as the employees at Farm 8.

In response to the incidents mentioned above, on May 15, 2008, the Plaintiff filed a "Charge of Discrimination" ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). Def.'s Br. Mot. Dismiss Ex. 1. This EEOC Charge complains of discrimination based on race, color, and sex, and includes a retaliation claim. *Id.* Plaintiff received her Notice of Right to Sue from the EEOC within ninety days of filing this action. *Johnson v. Portfolio Recovery As-*

*socs.,* *L.L.C.,* 682 F.Supp.2d 560, 569 (E.D.Va.2009) ("For any number of reasons, the EEOC may also issue a notice to a claimant of their right to bring a private civil action," rather than pursuing the action on behalf of the claimant.)

On April 12, 2010, the Plaintiff filed a Complaint in this Court, alleging two counts. In Count I, the Plaintiff accuses the Defendant of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. However, this Count refers both to violations of Title VII and violations of 42 U.S.C. § 1981. In Count II, the Plaintiff alleges that the Defendant wrongfully retaliated against her in response to her complaints of sexual harassment. On July 7, 2010, the Defendant filed the motion to dismiss currently pending before this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. STANDARD OF REVIEW

This case presents interesting issues with respect to the standard of review to be applied by the Court. Although Defendant's motion to dismiss only cites Rule 12(b)(6), Defendant's briefs note that this motion to dismiss is brought pursuant to both 12(b)(1) and 12(b)(6). As a threshold matter, many of the issues raised in Defendant's motion to dismiss are typical of a 12(b)(6) motion, and thus the Court will deal with those pursuant to 12(b)(6). However, the standard of review applicable to two of the Defendant's grounds for dismissal warrants further discussion.

The first ground warranting discussion will be referred to as the "untimeliness" ground. According to the Defendant, several of the incidents, of which Plaintiff complains, are untimely and thus barred because Plaintiff did not file an EEOC charge about such incidents within the time frame prescribed by statute. This is to be compared to the second ground warranting discussion, which shall be referred to as a "failure to exhaust." In that vein, Defendant argues that the Complaint exceeds the scope of the EEOC charge because the EEOC charge contains an "earliest" date of discrimination, and Plaintiff attempts to include in the Complaint incidents preceding that date. As a result, Defendant asserts that the Plaintiff has failed to exhaust administrative remedies with respect to incidents preceding that date, and that this Court therefore has no subject matter jurisdiction to address those incidents. *See Jones v. Calvert Gro., Ltd.,* 551 F.3d 297, 300 (4th Cir.2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.")

A "failure to exhaust" argument is different than an "untimeliness" argument. The scope of an EEOC charge defines the parameters of a Plaintiff's right to later proceed in federal court. If a Plaintiff fails to include a certain claim in an EEOC Charge, that Plaintiff has failed to exhaust administrative remedies with respect to that claim. Failure to exhaust administrative remedies precludes a federal court from exercising subject matter jurisdiction in the context of Title VII. Such an asserted failure should be analyzed pursuant to Rule 12(b)(1), which specifically addresses subject matter jurisdiction. *See, e.g., Khoury v. Meserve,* 268 F.Supp.2d 600, 606 (D.Md.2003) ("Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.")

"Failure to exhaust" claims are to be distinguished from the situation where a specific charge of discrimination is filed with the EEOC, but it is allegedly untimely because the event occurred more than 300 days before the date the charge was filed. As the Supreme Court held in *Zipes*

*v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Therefore, unlike a "failure to exhaust" argument alleging the absence of a jurisdictional prerequisite, which should be addressed by a 12(b)(1) motion challenging subject matter jurisdiction, this Court finds that the "untimeliness" claims should be addressed within the context of a 12(b)(6) motion. *See, e.g., West v. N.M. Taxation & Revenue Dep't.*, No. 09–0631, 2010 WL 4927937, at *11–12, 2010 U.S. Dist. LEXIS 131626, at *48 (D.N.M.2010).

While the distinction in treatment at first seems insignificant, it must be remembered that the standards for consideration can differ between motions filed pursuant to Rules 12(b)(1) and 12(b)(6). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Although it is not clear, from the Defendant's briefs, how Defendant is apportioning its argument, the Court will treat the "untimeliness" argument, regarding the 300 day statutory window, under the 12(b)(6) standard, and the argument regarding the "earliest" date of discrimination listed in the EEOC Charge as a scope argument under 12(b)(1) challenging subject matter jurisdiction.

### A. 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to seek dismissal based on the court's lack of subject matter jurisdiction over the action. However,

> [t]here are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction. First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be

based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Adams*, 697 F.2d at 1219. The Defendant is attacking Plaintiff's assertion of subject matter jurisdiction under the first method, alleging that the Complaint, when viewed with the referenced and thereby incorporated EEOC Charge, fails to allege facts over which the Court can exercise subject matter jurisdiction. Therefore, the Court will afford Plaintiff the same procedural protections she would otherwise receive under Rule 12(b)(6) consideration.

### B. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Requiring a claim be plausible does not impose a probability requirement at the pleading stage. *Id.* at 556, 127 S.Ct. 1955. However, it does ask for more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), so as to " . . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Bell Atl. Corp.,* 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555, 127 S.Ct. 1955 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556, 127 S.Ct. 1955 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338

(1989)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

A Rule 12(b)(6) motion may also seek dismissal based on an applicable statute of limitations in certain circumstances. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996). *See also Darden v. Cardinal Travel Ctr.,* 493 F.Supp.2d 773, 775 (W.D.Va. 2007) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)) ("[A] defense of the statute of limitations may be raised in a Rule 12(b)(6) motion where that defense appears clearly on the face of the complaint."). The requirement that a charge of discrimination be filed timely with the EEOC is a requirement that is similar to a statute of limitations defense in that it is an affirmative defense subject to waiver, estoppel, and equitable tolling. *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127. Therefore, a defendant may seek dismissal pursuant to Rule 12(b)(6) where it asserts that a plaintiff has failed to file a charge in a timely manner. *Douglas v. Norton,* 167 Fed. Appx. 698, 704–05 (10th Cir.2006).

Where a motion to dismiss is filed with respect to a civil rights claim, the Court "must be 'especially solicitous' of the wrongs alleged." It "must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts al-

leged.'" *Harrison v. U.S. Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988)(internal citation omitted).

## III. DISCUSSION

The Defendant has moved for dismissal of Plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant has presented six bases for dismissal in support of this motion. First, Defendant claims that Count I of the Complaint, alleging sexual discrimination in violation of 42 U.S.C. § 1981, fails to state a claim because § 1981 only prohibits discrimination based on race, color or alienage. Second, the Defendant has asserted that many of the incidents upon which Plaintiff bases her sexual harassment claim occurred well over 300 days before May 15, 2008—the date Plaintiff filed her EEOC Charge. As a result, the Defendant contends that those incidents are time barred and cannot form the basis of a Title VII claim. In conjunction with this argument, the Defendant also argues that the Plaintiff cannot use any incidents to support her claim that occurred prior to the date she listed on the EEOC Charge as the "earliest" date on which discrimination took place because the Court lacks subject matter jurisdiction over those incidents. Third, with respect to Count I of the Plaintiff's Complaint, Defendant asserts that any discriminatory acts in violation of 42 U.S.C. § 1981 that occurred more than four years before the date this action was filed are barred by the four-year limitation of actions period under 28 U.S.C. § 1658. Fourth, the Defendant asserts that the Plaintiff has failed to present a prima facie case of sexual harassment because she has failed to allege acts or omissions that are sufficiently severe or pervasive. Fifth, the Defendant contends that because the Plaintiff was not aware that co-workers were looking through the "peepholes" at the time that the alleged

peeping occurred, she fails to state an actionable claim for sexual discrimination in violation of Title VII. Lastly, the Defendant argues that the Complaint fails to present a prima facie case of retaliation under Title VII.

### A. Claims under 42 U.S.C. § 1981

Count I of the Plaintiff's Complaint is titled "Sexual Harassment in violation of Title VII." However, in several of the operative paragraphs, Plaintiff refers to discrimination on the basis of her gender in violation of 42 U.S.C. § 1981. Relying on those paragraphs, the Defendant's motion to dismiss contends that any incidents connected to a § 1981 complaint are time barred if they occurred more than four years prior to this action. *See* 28 U.S.C. § 1658. Further, the Defendant argues that § 1981 only prohibits discrimination based on race, color or alienage, and thus there can be no sexual discrimination claim under § 1981.

In Plaintiff's brief in opposition to Defendant's motion, Plaintiff noted that any reference to § 1981 in the Complaint was in error, and that the only claims that Plaintiff is asserting are under Title VII. As a result, Defendant's motion to dismiss the portions of Count I referencing § 1981 is granted. Plaintiff is ordered to amend the erroneous portions of Count I of the Complaint to reflect the intended provision of law within fifteen (15) days of the entry of this Opinion and Order. *See* Fed. R.Civ.P. 15(a)(2).

### B. Title VII of the Civil Rights Act of 1964

Plaintiff's remaining claims fall under Title VII of the Civil Rights Act of 1964. Title VII provides that it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Although "sex" is one of the potential bases for a discrimination claim under Title VII, according to the Supreme Court, the courts "are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ One form of sex discrimination that courts have recognized under Title VII is "sexual harassment." *Id.* ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex."). However, even sexual harassment is composed of several different types of behavior. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 751–52, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The first type of sexual harassment is often referred to as "quid pro quo" sexual harassment. In a quid pro quo case, a supervisor often "demands sexual consideration in exchange for job benefits." *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983) (citing *Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18 (11th Cir.1982)). The second type of sexual harassment is harassment based on a hostile work environment. As the Supreme Court stated in *Harris v. Forklift Sys., Inc.*, actionable conduct "is not limited to economic or tangible discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing *Meritor Sav. Bank. FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49

(1986) (internal quotations omitted)). Title VII has been violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment....'" *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (internal citations omitted).

In Count I, the Plaintiff has alleged that Defendant discriminated against her based on her gender by "allowing continual sexual harassment of Plaintiff by her male co-workers thereby creating a sexually hostile work environment." Compl. ¶ 29. Therefore, Plaintiff has alleged sexual harassment based on a hostile work environment. In moving to dismiss this claim, the Defendant has raised a number of procedural and substantive grounds.

### 1. Timeliness and Scope of Plaintiff's Complaint

Procedurally, the Defendant asserts several reasons as to why many incidents referred to in the Plaintiff's hostile work environment claim cannot be relied on by her to support her action. It is important for this Court to determine at the threshold what incidents the Plaintiff may rely on to support her action because the Court cannot determine the merits of the Defendant's substantive contentions, namely that the Plaintiff has failed to allege a prima facie Title VII violation, until it determines the incidents upon which the Plaintiff may rely in supporting those claims.

■ The Defendant has made two arguments regarding the timeliness and scope of the Plaintiff's Title VII claims. First, the Defendant has asserted that the Plaintiff· is barred from using any allegedly discriminatory incidents that occurred more than 300 days before the filing of her

official EEOC Charge [3] to support her claim because those incidents are untimely as a matter of law. Second, the Defendant also contends that the Plaintiff may not exceed the scope of her EEOC Charge by complaining in this civil action of any incidents that occurred prior to January 1, 2007, because "01–01–2007" is the date that the Plaintiff asserted was the "earliest" "date of discrimination" on her EEOC Charge.

### a. Timeliness

#### i. Statutory Time Frame for EEOC Complaints

According to Title VII of the Civil Rights Act of 1964, when an employee complains of an unlawful employment practice, that employee must initially file a charge with the EEOC before bringing a civil suit. The Act provides a time frame within which a plaintiff must file this charge, otherwise the complaint will be time barred. Under Title VII, typically a charge must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, this period is extended to 300 days "when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir.1998) (referring to 42 U.S.C. § 2000e–5(e)(1)). *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("In a state that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice....").

**3.** As a preliminary procedural matter, Defendant has attached a copy of the Plaintiff's EEOC Charge to its motion to dismiss. This attachment was not attached to the Plaintiff's original Complaint. The general rule is that when matters outside the pleadings are presented to the court on a 12(b) motion, that motion must be treated as a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(d). However, in the present case, Defendant's attachment may be considered by this Court without converting its motion to dismiss into a motion for summary judgment. The Fourth Circuit has held that "a court may consider [extrinsic evidence] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir.2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999) (internal quotation marks omitted)). *See also Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 335 (E.D.Va.2005) (quoting *Gasner v. County Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va.1995)) ("In the Eastern District of Virginia, 'when a plaintiff fails to introduce a pertinent document as part of his complaint' the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for Summary Judgment.'").

In the present case, the Plaintiff specifically mentioned in her Complaint that she "filed a timely charge of sex discrimination, sexual harassment, and retaliation, against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), and received her Notice of Right to Sue...." Compl. ¶ 6. This "timely charge" to the EEOC is integral to the Plaintiff's action because it establishes the time frame within which events must have taken place in order for her to assert those incidents in the present civil action. Further, Plaintiff relied on the filing of that EEOC Charge in order to receive her "Notice of Right to Sue," which is a prerequisite to bringing suit in this District Court. *See* 42 U.S.C.2000e–5(f)(1). Additionally, Plaintiff has not contested the authenticity of the document. Since this EEOC Charge was "integral to and explicitly relied on in the complaint," and since its authenticity is not challenged, the Defendant may attach the document to its motion to dismiss without converting it into a motion for summary judgment.

Because Virginia has a state deferral agency, it is known as a "deferral state." *See Tinsley,* 155 F.3d at 440 ("We hold, to the contrary, that the authority granted to the Virginia Council on Human Rights is sufficient to qualify it as a deferral agency under Title VII."). As such, an employee challenging an employment practice of an employer in Virginia has 300 days from the last date of alleged discrimination to file a charge with the EEOC. *See Edelman v. Lynchburg Coll.,* 300 F.3d 400, 404 (4th Cir.2002). If the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from Title VII relief. *Morgan,* 536 U.S. at 109, 122 S.Ct. 2061 ("A claim is time barred if it is not filed within these time limits.").

In *Morgan,* the United States Supreme Court explained the reasoning behind this time limit, noting that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 108, 122 S.Ct. 2061 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). "By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* at 109, 122 S.Ct. 2061. "The limitations period, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are long past." *Del. State Coll. v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

### ii. Discrete Acts v. Hostile Work Environment

The key to determining whether a gender discrimination complaint, like the one asserted here, is timely, is to initially determine whether the Plaintiff is complaining of a discrete act of gender discrimination or sexual harassment based upon a hostile work environment theory. A discrete act is an act that is not necessarily part of a continuous hostile environment. It is an act such as "termination, failure to promote, denial of transfer, or refusal to hire...." *Morgan,* 536 U.S. at 114, 122 S.Ct. 2061. Unlike a hostile work environment claim, which is continuous in nature, a discrete act is solitary and occurs "on the day that it 'happened.' " *Id.* at 110, 122 S.Ct. 2061. If a party is alleging a discrete act of discrimination in Virginia, that party must file the charge within 300 days of the date of the act or lose the ability to recover for it pursuant to Title VII. *See Morgan,* 536 U.S. at 110, 122 S.Ct. 2061. A party may not attempt to make an earlier discrete discriminatory action, for which time has expired, timely once again by "bootstrapping" it to a timely charge, even if both incidents are related. "[D]iscrete acts that fall within the statutory time period do not make timely [other] acts that fall outside the time period." *Id.* at 112, 122 S.Ct. 2061. In other words, previous discrete incidents "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061.

However, hostile work environment claims are fundamentally different than claims for discrete acts of discrimination. While discrete acts are isolated events, hostile work environment claims involve repeated conduct. *See id.* at 115, 122 S.Ct. 2061. According to the Court in *Morgan,* a hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* "Such claims are based on the

cumulative effect of the individual act." *Id.*

### iii. Continuing Violation Doctrine

 Unlike an allegation of discrimination grounded in discrete acts, when a Title VII claim based on a hostile work environment is alleged, a court is not necessarily constrained in its analysis to only consider actions that occurred within 300 days of filing the EEOC Charge. The earlier incidents may still be timely under the "continuing violation" doctrine. According to the continuing violation doctrine,

> consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.

*Id.* at 105, 122 S.Ct. 2061.

This doctrine has its roots in the words of Title VII itself. According to the statute, an employee must file a complaint within 300 days of the "unlawful employment practice." The Supreme Court has held that the entire time period covered by a hostile work environment claim is considered "one unlawful employment practice" for Title VII purposes. *See id.* at 118, 122 S.Ct. 2061. Therefore, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118, 122 S.Ct. 2061.

 As *Morgan* counsels, a court's principal task when assessing the timeliness of a Title VII hostile work environment claim is to "determine whether the acts about which an employee complains are part of the same actionable hostile work environment, and if so, whether any act falls within the statutory time period." *Id.* at

120, 122 S.Ct. 2061. If acts outside the statutory window contribute to a hostile work environment, the Court may consider all of those acts, so long as any act contributing to that same hostile work environment occurs within the statutory window. Such a timely-act "anchors" the previous acts that occurred more than 300 days before the charge, making them also timely under the continuing violation doctrine. *See also Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 219 ("The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a hostile work environment claim."). Importantly, unlike a discrete act of Title VII discrimination, the "anchoring" act need not rise to the level of a Title VII violation itself as long as it contributes to the hostile work environment. *Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir.2007).

The Supreme Court has largely left it to the federal Courts of Appeals to determine what actions combine to constitute one hostile work environment. With respect to the claim in *Morgan,* the Court of Appeals noted that the claims stemmed from the "same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan,* 536 U.S. at 120, 122 S.Ct. 2061. The Supreme Court agreed with the Court of Appeals, noting that such conduct could be combined to constitute one hostile work environment claim. *Id.* at 120–21, 122 S.Ct. 2061.

In *Gilliam,* the Fourth Circuit addressed a hostile work environment claim based upon a continuing violation theory. The Plaintiff claimed that she was repeatedly harassed, because of her race, by her supervisor from March 1998 to August

31, 2001, though she did not file a claim with the EEOC and her state's agency until January 15, 2002. *Gilliam*, 474 F.3d at 135–38. Initially, the District Court ruled that the incidents occurring outside of the 300 day statutory window were time barred and were not saved by the continuing violation doctrine. *Id.* at 139. The Fourth Circuit reversed. In formulating the standard for determining when a continuing violation exists, the *Gilliam* court stated that in order for all of the acts to be considered, Gilliam must show that the acts which occurred within the 300 day statutory window were a "continuing part of discriminatory activity that began prior to the limitations period." *Id.* at 140. Since the same supervisor reprimanded Gilliam for similar incidents both inside and outside the limitations period, the court determined that the continuing violation doctrine applied, and all discriminatory acts complained of could be considered as part of one hostile work environment claim.

A review of decisions from other circuit and district courts is helpful in defining the parameters of the continuing violation doctrine. In *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir.2009), the Fifth Circuit noted that "the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts." In *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 n. 7 (1st Cir.2010), the First Circuit noted that the "anchoring act" must be "substantially related" to the earlier incidents of abuse, with substantial relationship defined as both acts having "sufficiently similar" subject matter in common. In *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d. Cir.2001), the Second Circuit stated that a "continuing violation theory may be used where there have been specific and related instances of discrimination. . . ."

The District Courts in this Circuit have also had occasion to address the continuing violation doctrine. In *Lewis v. Norfolk S. Corp.*, 271 F.Supp.2d 807, 812 (E.D.Va. 2003), a court in this district stated that "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act which fall outside the filing period may be considered for purposes of liability even though these acts cannot serve as the basis for an EEOC charge." Similarly, in *O'Bar v. Lowe's Home Ctrs., Inc*, No. 5:04–CV–00019–W, 2007 WL 604711, at *3–4, 2007 U.S. Dist. LEXIS 12843, at *11 (W.D.N.C. Feb. 22, 2007), the District Court for the Western District of North Carolina stated that the pre- and post-statutory window claims must be "sufficiently alike to constitute together one continuous chain of events." In *Bryan v. Lucent Techs. Inc.*, 307 F.Supp.2d 726, 734 (D.Md.2004), a case from the District of Maryland, the court phrased the test as follows: "any incidents that occur prior to this time period are non-cognizable unless plaintiff can show that they are related to an incident within the period as one or more in a series of separate but related acts amounting to a unitary violation."

█ Based on the applicable case law, this Court concludes that in order for several events to qualify as part of the same hostile work environment, all of the incidents must be so significantly related to each other as to comprise one unitary and ongoing unlawful employment practice. However, "ongoing" does not necessarily require discriminatory conduct each day or week, provided the acts, when viewed in their entirety, compose a unitary hostile work environment. With that definition in mind, the Plaintiff, who has alleged the existence of a hostile work environment,

must show that the Defendant committed an act of sexual harassment within 300 days of filing her Charge with the EEOC, though this act need not be an independent violation of Title VII itself. She can then support her claim with other earlier incidents if she can show that the timely act is part of the same hostile work environment as the earlier "untimely" acts, and is thus capable of "anchoring" them to her claim.

In the present case, the Plaintiff filed her EEOC Charge on May 15, 2008. As a result, events that occurred prior to July 20, 2007 would be considered untimely if not for the possibility of inclusion based upon the continuing violation doctrine. Therefore, the Court must identify the "anchoring acts" alleged by the Plaintiff and determine whether they are part of the same hostile work environment as the "untimely acts."

#### iv. Anchoring Acts

In her Complaint, Plaintiff alleges three anchoring acts that occurred later than July 20, 2007. First, in December 2007, Plaintiff alleges that Miguel Navarro brought a digital camera to work and took Plaintiff's picture against her wishes. Second, also in December 2007, several men continued to group together and talk among themselves, while pointing and gesturing towards the Plaintiff. There is no specific allegation that either of these incidents was sexual in nature.

Third, on January 24, 2008, Plaintiff and her co-worker were in the area where they shower at the conclusion of the work day. When her co-worker opened the door that leads out of the shower area, Plaintiff and her co-worker saw Salvador Hernandez kneeling against the door. Startled, Salvador fell into the shower area and then ran away as soon as he could reach his feet. Upon their post-incident inspection, Plaintiff and management discovered three drilled holes in the door. According to the Complaint, Salvador was later arrested, charged, sentenced and terminated as a result of this incident. Each of these three anchoring acts occurred within 300 days of Plaintiff's filing of the EEOC Charge and are thus properly included in this civil suit.

#### v. Events from Outside the Statutory Window

The Plaintiff also complains, by this Court's count, of nine incidents or types of harassment that occurred outside of the 300 day statutory window for Title VII claims. She alleges that between 2003 and 2008 the Defendant's employees (1) touched Plaintiff on the shoulders; (2) rubbed Plaintiff's leg and foot; (3) subjected Plaintiff to extraordinary scrutiny; (4) made disparaging remarks about Plaintiff's race; (5) smirked, laughed, and gestured towards the Plaintiff; (6) rubbed Plaintiff's co-worker's arms and made sexual comments to her; (7) openly discussed in the Plaintiff's presence another employee masturbating; (8) drew a graphic sexual picture depicting male and female sex organs and delivered it to the room where the Plaintiff worked; and (9) pointed at the Plaintiff while describing her body parts in Spanish. The only reference to the time frame in which these activities took place is that they occurred between 2003 and the "time of the event"—presumably the shower event.

#### vi. Application

Although Plaintiff's allegations regarding events that occurred prior to the 300 day window created by Title VII are vague, when viewed through the required prism of plausibility, it appears that the Plaintiff has described a set of facts that make it plausible that these nine alleged events are part of the same hostile work environment as the alleged anchoring acts.

In other words, in order to be considered part of one hostile work environment, the pre-limitations actions must be significantly related to the anchoring acts so as to comprise one unitary and ongoing unlawful employment practice. At this point, based upon the following indicators, that seems more plausible than speculative.

### (1) Subject Matter

First, the Court must examine whether the incidents complained of are similar in nature. Effectively, do they involve a similar type of harassment? Here, many of the allegations consist of sexual harassment. Plaintiff has alleged that male co-workers touched her shoulders and rubbed her legs and foot. She has also alleged that male co-workers: discussed in front of her a male co-worker's experiences masturbating, described female body parts while pointing at the Plaintiff, and eventually drew a sexual picture for the Plaintiff to see. Above all, she has alleged that at least one co-worker drilled holes in a door in order to peer into her shower area. Both the pre- and post-limitations events concern that same sexual subject matter, making it likely that they all comprise the same employment practice.

Further, even though the Plaintiff has made allegations in her Complaint that do not, in isolation, appear to be sexual in nature or specifically based on her sex, when viewed together with the more sexually overt allegations, it is plausible that the underlying motivation for those comments was sexual in nature. As a result, allegations such as "subjecting Plaintiff to extraordinary scrutiny" and "smirking, laughing, and gesturing towards Plaintiff" may also be further developed during discovery. *See O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st. Cir.2001) ("[W]here a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overtly sexually abusive conduct in assessing a hostile work environment claim.").

### (2) Frequency

Second, the Court looks at the frequency with which these incidents have occurred. The instant case arguably does not present a situation where there was only a single discrete harassing event, followed by an extended period of calm prior to another event. The Plaintiff has alleged nine acts of sexual harassment which began in the period between 2003 and 2006, and continued until 2008. Without doubt, the Plaintiff's pleading is vague in alleging the time frame during which these incidents occurred. Discovery will likely clarify the time of such allegations. Evidence developed during the course of discovery, for example, may show that nearly all of the incidents occurred in 2003, followed by a four-year gap, before the 2007 and 2008 incidents occurred. Such a scenario would counsel against a finding that all of the acts at issue are part of a continuing violation. However, the evidence may also show that much of the conduct occurred in a more concentrated time period between 2006 and 2008, which would militate in favor of inclusion of all acts and the finding of a continuing violation. At this point in the proceeding, when drawing inferences favorable to the non-movant, and viewed through the plausibility standard as required by the Fourth Circuit, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009), the Court cannot conclude that these incidents occurred so infrequently so as to make it speculative that they constitute one unitary, continuous and ongoing employment practice. In other words, the factual allegations have crossed the line from speculation to plausibility.

In reaching this conclusion, the Court is mindful that Defendant cited three cases where other courts found that an eight year gap, a three year gap, and a two year gap in harassing behavior could not form the basis of a continuing violation. However, those cases were all decided on summary judgment, where the court had the benefit of evidence to color the allegations. Without such evidence here, the Court cannot conclude that the factual allegations reflect incidents that were too infrequent to create a continuing violation.

### (3) Knowledge of Actionable Claim

Third, when examining each event discretely, it is not clear that any single event, prior to the shower incident, would have put the Plaintiff on notice that she could potentially assert a sexual harassment claim against her employer.[4] While the uninvited touching of Plaintiff's shoulder or the drawing of graphic sexual pictures are undoubtedly unwelcome behaviors in the workplace, a reasonable employee may not believe they rise to the level of sexual harassment. Even the fact that the Plaintiff complained to her management on several occasions does not defeat that conclusion. It is one thing to believe you have a reasonable complaint to management, and quite another to think co-worker's actions merit a lawsuit. While discrete acts of discrimination often give rise to an immediate lawsuit, more subtle acts such as those alleged in this case may be more likely to create an actionable hostile work environment.

### (4) People Involved

Fourth, it appears based on the Plaintiff's Complaint that a relatively small group of employees participated in many of the allegedly harassing actions. The Complaint states that Defendant hired a number of employees between 2003 and 2008, including Umberto Santiago, Miguel Vasquez, Salvador Hernandez, Jose Rodriguez, Ignacio Rosario, Miguel Navarro, and Leonardo (Talon) Rodriguez. The Plaintiff then asserts that these co-workers engaged in the sexually harassing acts of which she complains. Further, the three "anchoring" acts involved Miguel Navarro in one, the "men" in another, and Salvador Hernandez in the third—all persons who were plausibly participants in the earlier incidents. While the Plaintiff has not conclusively shown that the same individuals were responsible for much of the harassment, she need not meet that burden at this point. The fact that the "untimely" acts and the anchoring acts may have a relatively small group of employees in common counsels in favor of finding that the Plaintiff has alleged one unitary hostile work environment. However, that conclusion is not unassailable. If evidence fails to show that the same people were involved in pre-and post-limitations period events, that would counsel against a finding of one unitary hostile work environment at later stages in the proceedings.

### (5) Continuing Violation Doctrine Applies

Based on all of the considerations above, at this stage in the proceedings, the Court concludes that it is more plausible than speculative that the incidents are substan-

---

**4.** While the Supreme Court stated in *Morgan* that "we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct,"

*Morgan*, 536 U.S. at 117–18, 122 S.Ct. 2061, a consideration of whether the acts put a Plaintiff on notice of potential discriminatory conduct helps inform the inquiry of whether the Plaintiff is complaining of one hostile work environment, or individual discrete acts.

tially related. Therefore, the Plaintiff has pled sufficient facts to invoke the continuing violation doctrine, such that allegations regarding sexual harassment occurring prior to July 20, 2007 will still be considered timely and part of one unitary hostile work environment at this juncture. However, evidence developed during discovery may tend to strengthen or undermine that conclusion at a later stage in the proceeding. *See also Lewis v. City of Fresno,* No. CV–F–08–1062, 2009 WL 2905738, at *7, 2009 U.S. Dist. LEXIS 80556, at *18 (E.D.Ca. Sept. 3, 2009) ("Whether Plaintiff is entitled to the continuing violation doctrine is a factual inquiry that must be resolved at summary judgment or trial."); *Drees v. County of Suffolk,* No. 06–CV–3298, 2007 WL 1875623, at *9, 2007 U.S. Dist. LEXIS 46618, at *27 (E.D.N.Y. June 27, 2007) ("... it may be that, after discovery in the instant case, plaintiff may be unable to prove that the timely incidents of harassment were sufficiently connected to the otherwise time-barred conduct ... [n]evertheless, at the motion to dismiss stage, the Court is unable to conclude that it will not be possible ....").

### b. Scope Limitation Created by Jan. 1.2007 Date in EEOC Charge

The Court now turns to consideration of the scope of Plaintiff's EEOC Charge. In its motion to dismiss, Defendant Murphy–Brown calls attention to the fact that Plaintiff's EEOC Charge states that the "earliest" date on which discrimination took place was "01–01–2007." Since the EEOC Charge did not explicitly complain to the EEOC of earlier incidents, the Defendant contends that this Court does not have subject matter jurisdiction to adjudicate any allegedly discriminatory events occurring before January 1, 2007, because, with respect to those events, the Plaintiff has failed to exhaust administrative remedies.[5] As a result, the Defendant asserts that the Plaintiff is barred from supporting her civil suit against the Defendant with events that occurred prior to January 1, 2007.

■ While the Defendant is correct that an EEOC charge constrains a Plaintiff's subsequent civil suit on the same discrimination claims, those constraints are flexible. The scope of any subsequent civil suit is limited to the EEOC Charge, and any facts uncovered in a reasonable investigation of that EEOC Charge. *King v. Seaboard Coast Line R.R. Co.,* 538 F.2d 581, 583 (4th Cir.1976) ("That charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit."). *See also EEOC v. Gen. Elec. Co.,* 532 F.2d 359, 365 (4th Cir.1976) ("If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process ..."). "The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reason-

---

**5.** As explained in the "Standard of Review" section, when a Defendant brings a motion to dismiss alleging that the Court does not have subject matter jurisdiction because the Plaintiff complains of incidents in the civil suit that are outside the scope of the EEOC charge, that contention is addressed pursuant to Rule 12(b)(1). However, because Defendant alleges that the Complaint, along with the explicit-

ly-referenced EEOC Charge that was attached to the Defendant's brief, fails to allege facts over which the Court can exercise subject matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams,* 697 F.2d at 1219.

able cause determination that may be rested on that investigation." *Id.* at 364. *See also id.* at 366 ("*So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be ... followed ... by a civil suit, without the filing of a new charge on such claim of discrimination.") (emphasis in original).

To strictly limit the bounds of a plaintiff's civil suit to the specific allegations made in the EEOC Charge would eviscerate some of the protections Title VII was designed to provide.

> Complainants to the EEOC are seldom [represented by] lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

*Gamble v. Birmingham S. R.R Co.,* 514 F.2d 678, 689 (5th Cir.1975)(quoting *Willis v. Chicago Extruded Metals Co.,* 375 F.Supp. 362, 365 (N.D.Ill.1974)). As long as the potentially discriminatory incidents could be uncovered through a reasonable investigation of the charge filed with the EEOC, those incidents can properly be considered by the court in a subsequent civil suit.

■ In the present case, Plaintiff stated in her EEOC filing that the earliest date on which discrimination took place was "01–01–2007." It is certainly possible that at the time of the EEOC Charge, the Plaintiff did not realize that previous actions in her workplace were potentially discriminatory and might comprise one unitary hostile work environment. A reasonable investigation of the peephole incident might well uncover previous acts of alleged sexual harassment in the workplace. This is especially true, considering the Plaintiff's allegations that a finite group of employees typically engaged in sexual harassment, and one of those employees was responsible for the shower peephole incident. As a result, incidents now described in the Plaintiff's Complaint in this Court, and yet pre-dating the "01–01–2007" "earliest" date described in the earlier EEOC Charge, are not barred from consideration by this Court merely because the Plaintiff listed a date of earliest discrimination in her May 15, 2008 EEOC Charge that was later than the alleged acts of discrimination described in her April 12, 2010 Complaint beginning this suit. Therefore, the Court does not lose subject matter jurisdiction over those earlier incidents for failure to exhaust administrative remedies.

### 2. Severity and Pervasiveness of the Alleged Act

■ The Defendant's next ground for dismissing the Complaint is that the acts of which Plaintiff complains are not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. "To make out a claim against her employer for creating a hostile work environment because of sexual harassment under Title VII, a plaintiff must show 'that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer.'" *Ziskie v. Mineta,* 547 F.3d 220, 224 (4th Cir.2008) (quoting *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 331 (4th Cir.2003) (en banc)).co

■ Whether the conduct was unwelcome must be determined from the plaintiff's subjective perspective. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. 367 ("... if the victim does not subjectively perceive

the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."); *Pueschel v. Peters,* 577 F.3d 558, 565 (4th Cir.2009). However, the remaining three elements are "made up of objective components based on a 'reasonable person' standard." *Pueschel,* 577 F.3d at 565 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris,* 510 U.S. at 21, 114 S.Ct. 367) ("A sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.").

The Defendant has not contested elements one, two and four of the sexual harassment claim at this stage in the proceedings. However, Defendant does contend that the conduct alleged by the Plaintiff fails to satisfy the third element of the test—that is, that a reasonable person would consider that the alleged conduct was sufficiently severe or pervasive to alter the conditions of employment. The Supreme Court has said that the conditions of employment have been altered when harassment is so severe and pervasive that the workplace is " 'permeated with discriminatory intimidation, ridicule, and insult.' " *Pueschel,* 577 F.3d at 565 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (1993)).

■ "There is no 'mathematically precise test' for determining if an environment is objectively hostile or abusive." *EEOC v. Fairbrook Med. Clinic. P.A.,* 609 F.3d 320, 328 (4th Cir.2010). "Objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Id.* (citing *Oncale*

*v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). The Fourth Circuit has held that "all the circumstances" includes " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* at 328 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367.) Additionally, courts also look to the "positions and ages of the harasser and victim." *Jennings v. Univ. of N.C.,* 482 F.3d 686, 696 (4th Cir.2007). When evaluating a Title VII claim, however, the court must always be cognizant of the fact that Title VII is not a "general civility code." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. While it protects against sexual harassment, it does not reach mere boorishness or crude behavior. *Fairbrook Med. Clinic, P.A.,* 609 F.3d at 328.

■ The Plaintiff's Complaint alleges incidents that are sufficiently severe or pervasive to proceed on a hostile work environment theory. When judging the severity or pervasiveness of the hostile work environment, the Court may only consider the actions that were within 300 days of the EEOC filing, and those untimely actions that the Court previously deemed to be "saved" by the continuing violation doctrine. *See Supra* Part III. B.1.a. However, since the Court applied that standard and determined above that none of the incidents alleged by the Plaintiff would be time barred at this stage of the proceeding, it considers all alleged incidents when determining whether the Plaintiff has alleged sufficient facts to state a hostile work environment claim.

*a. Frequency*

In measuring the severity or pervasiveness of a hostile work environment, this

Court will first look at the frequency of the harassing behavior. The more frequent the harassment, the more likely a Title VII violation has occurred. In *Jennings,* the Plaintiff, a University of North Carolina soccer player, sued the University under Title IX based on claims that her coach had sexually harassed her. *Jennings,* 482 F.3d at 691. In evaluating the Title IX claim, the Fourth Circuit was guided by case law interpreting Title VII. *Id.* at 695. The court vacated the District Court's granting of summary judgment, concluding that the Plaintiff had made a sufficient showing of a severe and pervasive environment. In part, this conclusion was supported by the frequency of the harassing conduct alleged. The *Jennings* court described the coach's "persistent" focus on the players' sex lives, with harassment that "permeated team settings," "occurr[ed] frequently," and took place "any time the team was together." Several players were targeted "almost every day or every other day." *Jennings,* 482 F.3d at 697–98.

Conversely, in *Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745 (4th Cir. 1996), the Fourth Circuit concluded that the Plaintiff had failed to make out a prima facie hostile work environment claim. There, the Plaintiff complained of a series of offensive incidents between he and his supervisor beginning in 1986 and terminating in 1993. *Hopkins,* 77 F.3d at 747–48. The court held that the incidents of harassment complained of occurred over a seven year period, with as much as one year gaps between the incidents. Finding that such intermittent conduct was not sufficiently pervasive to support a Title VII claim, the court noted that "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage." *Hopkins,* 77 F.3d at 753 (quoting *Basker-*

*ville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995)).

The factual allegations in Plaintiff's Complaint fall in a middle ground between *Jennings* and *Hopkins.* In the Plaintiff's Complaint, she alleges that a series of harassing behaviors, including "touching plaintiff on the shoulders" and "rubbing Plaintiff's leg and foot," began in 2003 and continued through 2008. Further, during this time, the Defendant's employees made sexual comments to Plaintiff's co-worker, showed the Plaintiff graphic sexual pictures, and openly discussed sexually explicit incidents (such as masturbation) in her presence in the workplace. These incidents allegedly continued to occur up until the shower incident of 2008. Although the Plaintiff does not plead that these incidents occurred virtually every day as they did in *Jennings,* the Court cannot conclude at the motion to dismiss stage that the conduct was so intermittent that it lacked pervasiveness as a matter of law.

### b. Severity

The Court next turns to the severity of the harassment. One need only look at the shower incident that the Plaintiff has pled to conclude that there was a severe incident by 2008. As part of the Plaintiff's job, she is required to shower in the morning, and apparently has the option of showering at the conclusion of the day. This shower routine took place on a daily basis. The discovery of a co-worker apparently leaning against the door that leads to the shower, such that he fell into the shower when the door was opened, coupled with the presence of three holes in the door that could be used to view the highly personal woman's shower room, could certainly be classified as severe. Although the Plaintiff was not actually showering at the time she discovered Salvador, that does not change the gravity of the alleged con-

duct. The severity of the harassment is further bolstered by the claims of touching Plaintiff on her shoulder, rubbing Plaintiff's leg, and the graphic sexual picture delivered to the Plaintiff.

### c. Physically Threatening or Humiliating

This Court must also determine whether the factual allegations describe conduct that is physically threatening or humiliating, or merely an offensive utterance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The holes in the shower could prove to be physically threatening. At the time when the incident occurred, there were only two female employees and the accused male employee on the farm. It is plausible that such an isolated environment, coupled with the overtly aggressive conduct of drilling viewing holes in a shower area, could amount to physically threatening behavior. Moreover, the Plaintiff has pled sufficient additional acts of potential humiliation. The specter of male co-workers talking amongst themselves about what the Plaintiff believed to be female body parts, and then pointing and gesturing towards the few female employees, could rise to the level of humiliation for a reasonable objective person. Further, when male employees touch the legs and shoulders of female employees in an unwelcome fashion, as alleged, that certainly rises above a mere "offensive utterance."

### d. Interference with Work Performance

The *Harris* Court also noted that harassing behavior might take the form of behavior that unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. As part of the Plaintiff's job, she is required to shower once in the morning, and may shower at her option in the afternoon. As a result of the alleged peeping incident, Plaintiff claims that she has developed a fear of working alone in her area and taking showers. It is certainly plausible that a fear of performing a required task because of the harassing conduct of co-workers amounts to an unreasonable interference with an employee's work performance.

### e. Relative Positions and Ages of Harasser and Victim

Lastly, this Court should look at the relative positions of the harasser and the victim. *See Jennings*, 482 F.3d at 696. Often, in sexual harassment claims, the harasser is in a position of power or seniority relative to the victim. For example, in *Fairbrook Med. Clinic, P.A.*, 609 F.3d at 329, the Fourth Circuit noted that a reasonable jury could "conclude that severity of Kessel's conduct was exacerbated by the fact that he was not only Waechter's immediate supervisor but also the sole owner of [the establishment where she worked].". However, harassment by a supervisor is not a requirement for a viable sexual harassment claim. As an example, in *Ocheltree*, the Fourth Circuit concluded that a reasonable jury could certainly find harassment severe and pervasive even when it was predominantly at the hands of co-workers. *See Ocheltree*, 335 F.3d at 333 (4th Cir.2003).

In the instant case, the Plaintiff has only alleged that her co-workers perpetrated the harassing behavior. According to her allegations, the sole role of the supervisors was their failure to rein in such conduct. While her co-workers' lack of supervisory power over her arguably lessens the severity of the harassment, it also may enhance its pervasiveness. This is not a case where the Plaintiff alleges that one person has engaged in discriminatory conduct. Rather, she has asserted that many people have barraged her with offensive behavior. While the severity of this conduct will need to be further developed during discovery, the fact that the harassers were merely co-workers does not inevitably lead to the

conclusion that the conduct was not severe or pervasive. The relative positions of the players involved in the behavior is only one factor the Court considers in determining whether the conduct alleged is sufficiently severe or pervasive to alter the conditions of employment.

When examining "all the circumstances" comprising this hostile work environment claim, the Court concludes that the Plaintiff has alleged sufficient facts to support a harassment claim that is severe and pervasive. Although this is not a case where the frequency of the harassment, based on the Complaint, can be described as incessant, discovery may show that the behavior was more than intermittent. Further, the nature of the shower incident coupled with other allegations of harassing behavior make it plausible that the behavior was objectively severe. Moreover, the Plaintiff has sufficiently pled pervasive, humiliating behavior that could reasonably alter the conditions of her employment. While not all of the behavior the Plaintiff objects to is more than mere boorishness or an offensive utterance, in total, it cannot be dismissed outright as lacking severity or pervasiveness.

### 3. Contemporaneous Awareness of the Peepholes

Defendant next contends that because the Plaintiff did not subjectively perceive the alleged peeping when it occurred, the peeping cannot be the basis of a hostile work environment claim. Although this Court must determine whether an objectively reasonable person would find conduct so severe and pervasive so as to amount to a hostile work environment, the Plaintiff must also show that she was subjectively aware that the conduct was occurring. *Bunch v. Shalala,* No. 94–2269, 1995 WL 564385, at *7, 1995 U.S.App. LEXIS 27275, at *21 (4th Cir. Sept. 25, 1995) (unpublished) ("More importantly, *Harris*

makes plain that Bunch must show her own subjective awareness of the harassment."). *See also Harris,* 510 U.S. at 21–22, 114 S.Ct. 367 ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). Therefore, if the victim was not aware of the harassment, it could not be sufficiently severe or pervasive to alter the conditions of her employment.

To support its contention, Defendant cites the Eighth Circuit case of *Cottrill v. MFA, Inc.,* 443 F.3d 629 (8th Cir.2006), which also involves a peeping incident. In *Cottrill,* a supervisor of one of the plaintiffs devised an elaborate set-up involving a two-way mirror and peephole through which to watch one of the plaintiffs use the restroom while at work. 443 F.3d at 631. A co-worker became suspicious of the supervisor's actions and alerted the company's management. *Id.* at 632–33. The victim of this peeping admitted in her deposition that she did not know her supervisor was viewing her. *Id.* at 636. Eventually, when her management informed her of the peeping, she agreed to use the restroom again (with a long shirt to protect her from exposure) so that management could catch the supervisor in the act. In upholding the District Court's grant of summary judgment against the plaintiffs, the Eighth Circuit held that "because she did not subjectively perceive the peeping, Cottrill may not rely on the peeping to establish that her work environment was hostile." *Id. But see Ciesielski v. Hooters of Am., Inc.,* No. 03 C 1175, 2004 WL 1699020, at *5, 2004 U.S. Dist. LEXIS 14478, at *15 (N.D.Ill. July 28, 2004) (noting that plaintiff admits that she was unsure if anyone had actually watched her, yet holding that a peephole could be considered as part of a hostile work environ-

ment); *Liberti v. Walt Disney World Co.,* 912 F.Supp. 1494, 1504–05 (M.D.Fla.1995).

The Defendant is correct that the Plaintiff must be subjectively aware of the harassment in order for such an incident to be actionable under Title VII. However, that does not present a hurdle for this Plaintiff based on the allegations in the Complaint. Unlike the plaintiffs in *Cottrill,* when drawing all reasonable inferences in favor of the Plaintiff, it is reasonable to conclude from the factual allegations that the Plaintiff caught Salvador Hernandez in the act of peeping. According to the Complaint, Plaintiff and her co-worker (Ms. Tennessee) were in the woman's shower room when Ms. Tennessee opened the door to exit, only to find Mr. Hernandez kneeling against the shower door. It is alleged that Mr. Hernandez actually fell into the woman's shower room when the door was opened. Unlike the facts of *Cottrill,* here, a jury could conclude from the allegations that the Plaintiff did "subjectively perceive the peeping."

Moreover, as implied in *Harris,* the purpose of the subjective awareness requirement is to ensure that the conduct has in fact altered the conditions of the victim's employment. According to Plaintiff's Complaint, as a result of the incident, the Plaintiff developed a fear of working alone in her area and a fear of taking showers at work. Such a reaction is reasonable given the thought of a co-worker peering at you while you are taking a shower that is required as a condition of your employment. The allegations make a plausible showing that the shower incident has altered the conditions of the victim's employment, and thus she was sufficiently aware of the peeping to support a Title VII claim.

### C. Retaliation

Lastly, the Defendant contends that the Complaint fails to state a plausible claim for retaliation under Title VII. In her Complaint, the Plaintiff alleged that when the Defendant received notice of the sexual harassment on the part of the Plaintiff's co-workers, the Defendant decided to transfer the Plaintiff to another farm instead of disciplining the perpetrators of the harassment. Plaintiff, who had never worked on the other farm, alleges that at the time she believed the same type of sexual harassment occurred on that other farm as allegedly occurred on Farm 8.

In addition to making it unlawful to engage in sexual harassment, Title VII also prohibits an employer from taking improper retaliatory action against an employee attempting to assert his or her rights under Title VII. According to the statute, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e–3(a). In order to succeed in a retaliation claim, an employee must show that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie,* 547 F.3d at 229 (citing *Holland,* 487 F.3d at 218).

The Defendant has asserted in its motion to dismiss that the retaliation claim should be dismissed on the ground, among others, that the Plaintiff has failed to show that the Defendant engaged in an adverse employment action against her. As mentioned previously, an adverse employment action is a necessary element of a retaliation claim. The Fourth Circuit has held that an adverse employment action "is a

discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir.2004)(internal quotations omitted). Two years after the Fourth Circuit's *James* opinion, the Supreme Court shed more light on how one determines whether an act has adversely affected terms, conditions, or benefits of a Plaintiff's employment. The Supreme Court stated in *Burlington Northern* that an adverse employment action must be the type that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotations omitted).

▬ Whether an employer's action is likely to dissuade a worker is examined from an objective reasonable worker perspective. *Burlington Northern,* 548 U.S. at 68, 126 S.Ct. 2405. In the context of a job reassignment, the Court has noted that "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' '" *Burlington Northern,* 548 U.S. at 71, 126 S.Ct. 2405 (citations omitted).

▬ The Fourth Circuit has held that "[t]he mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." *James,* 368 F.3d at 376. "A 'reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.' " *Id.* (quoting *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999)). " 'Absent any decrease in com-pensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.' " *Id.* (quoting *Boone,* 178 F.3d at 256–57).

Here, the Plaintiff's factual allegations fail to make out a prima facie case of retaliation against the Defendant. In order to support her contention that she suffered a retaliatory transfer to a new farm, Plaintiff alleges that: "management informed Plaintiff it was going to transfer Plaintiff ... to another farm;" "Plaintiff understands that the male employees participated in the same type of sexual harassing behavior [at the new farm] as they did at Farm 8;" Plaintiff was being "transferred to another farm instead of disciplining the perpetrators for their harassment;" and Plaintiff had "never worked on the farm to which she was being transferred." Compl. ¶¶ 25, 38, 39. She further states, rather conclusively, that she has suffered monetary and/or economic harm. Compl. ¶ 41.

▬ Even when viewed in the light most favorable to the Plaintiff, these allegations fail to show any detriment created by the transfer other than the fact that her new job assignment is possibly less appealing. Plaintiff has not alleged any decrease in compensation, job title, level of responsibility, opportunity for promotion or any other cognizable malady. At worst, Plaintiff alleges that she is being transferred to a farm where sexual harassment also takes place. If true, as unfortunate as that may be, such a transfer puts her in the same position she was allegedly in at her original farm of employment. Plaintiff has therefore failed to allege facts showing that the transfer had "some significant detrimental effect." *James,* 368 F.3d at

376. Accordingly, having failed to make out a prima facie case of retaliation in violation of Title VII, Count II of Plaintiff's Complaint is dismissed. The Court, *sua sponte*, grants Plaintiff leave to amend this count within fifteen (15) days of the entry of this Opinion and Order. Because the Court decides that the Plaintiff has failed to plead an adverse employment action in support of her retaliation claim, it need not address Defendant's second contention that Plaintiff did not engage in a "protected employment activity."

## IV. CONCLUSION

The Plaintiff has alleged two separate acts of discriminatory behavior in her Complaint that are prohibited by Title VII. In Count I, the Plaintiff has alleged sexual harassment grounded in allegations of a hostile work environment, based on actions that occurred between 2003 and 2008. With regard to timeliness of the Plaintiff's assertions, the Court finds that the factual allegations sufficiently implicate the continuing violation doctrine, and thus all of the actions alleged may be pursued further in regards to the hostile work environment claim. Further, the fact that the Plaintiff's EEOC Charge states that January 1, 2007 was the earliest date of discrimination does not deprive the Court of subject matter jurisdiction over incidents occurring prior to that date because the prior alleged incidents could have been uncovered through a reasonable investigation of the allegations in the EEOC Charge. Additionally, the Plaintiff has alleged a hostile work environment that is sufficiently severe and pervasive to avoid dismissal at this point in the proceedings, despite the fact that the Plaintiff may not have been aware of the alleged shower peeping at the exact instant it occurred. The Complaint described the awareness as being virtually simultaneous with the behavior.

Therefore, with respect to Count I, the Defendant's motion to dismiss is **DENIED.** However, the Plaintiff is ordered to amend the erroneous portions of Count I of the Complaint, referencing 42 U.S.C. § 1981, to reflect the intended provision of law within fifteen (15) days of the entry of this Opinion and Order. As to Count II, the Plaintiff has failed to plead a prima facie case of retaliation under Title VII. As a result, Defendant's motion to dismiss Count II is **GRANTED.** The Court, *sua sponte*, grants the Plaintiff leave to amend this count within fifteen (15) days of the entry of this Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**